[No. 3798.    Decided April 3, 1901.]

CONGREGATIONAL CHURCH BUILDING SOCIETY, *Appellant,*

v. SCANDINAVIAN FREE CHURCH OF TACOMA *et al.,*

*Respondents.*

MORTGAGES — RECORD INDEX — CONSTRUCTIVE NOTICE.

A mortgagee of the "Scandinavian Free Church" is not chargeable with notice of a prior mortgage made by the same corporation, when it was executed under the name of "Scandinavian Congregational Church," and indexed under that name in the mortgage records of the county.

SAME — EXISTING EQUITIES — NOTICE OF ASSIGNEE.

A *bona fide* assignee of a mortgage for value, although assigned to him after its maturity, is not chargeable with the knowledge of his assignor as to the existence of a prior mortgage, since the rule that the assignee of a mortgage takes it subject to existing equities applies to such equities only as exist between the mortgagor and mortgagee and not to those existing between the mortgagee and third persons.

Appeal from Superior Court, Pierce County.—Hon. THOMAS CARROLL, Judge. Affirmed.

*Walker & Fitch* and *James M. Harris,* for appellant.

*Stiles & Nash,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—On the 10th day of July, 1888, the Scandinavian Free Church of Tacoma borrowed of the Congregational Church Building Society a certain amount of money, for which it gave its note, and executed two certain mortgages for security therefor on lots 11 and 12 in block 1213 of the city of Tacoma. This is an action to foreclose one of the mortgages. At the time the mortgage in suit was executed a mistake was made in the name of the mortgagor, in that it was designated as the "Scandinavian

28-24 WASH.

Congregational Church," instead of the "Scandinavian Free Church." The mortgage is signed "Aufin Johnson and Ole M. Espeland, Trustees of the Scandinavian Congregational Church of Tacoma," and Johnson and Espeland acknowledged the execution of the mortgage. In May, 1889, the Scandinavian Free Church of Tacoma borrowed $900 of the Metropolitan Savings Bank of Tacoma, executed and delivered its promissory note therefor, and, to secure the same, executed and delivered to said bank its mortgage upon lots 11 and 12, in block 1213 of the city of Tacoma; being the same lots that it had mortgaged previously to the Congregational Church Building Society. Thereafter, in January, 1892, the said church society borrowed of said bank $400 additional, and upon the discharge of the $900 mortgage, executed and delivered to said bank a new note for $1,300; also a mortgage of like tenor and amount upon the said lots 11 and 12. In June, 1898, the said bank assigned said mortgage to the respondent, Charles McNamee, who thereupon foreclosed the same, and in August, 1898, purchased at sheriff's sale the property above described.. The case was tried by the court without a jury and judgment was entered in favor of the respondents.

There are but two material propositions in this case, the first of which is, was the index of the record sufficient to put the respondents upon their guard? In the index, under the column of "Grantor," is the following:

"Scandinavian
Cong. Ch.
Trustees of
Scandinavian
Congl. Ch.
Trustees of"

It is insisted by the appellant that the names of the grantors are so similar that notice should be imputed to

the subsequent mortgagees; but we do not think this is true. The searcher of the record, who wished to ascertain whether title had passed from the Scandinavian Free Church of Tacoma, would not obtain any light by finding upon the index, "Scandinavian Congregational Church, Trustees of." It cannot therefore be said that the respondents had constructive notice of this mortgage.

It is contended that the agent of the Tacoma Building & Savings Association had actual notice of the existence of this mortgage, and that McNamee, the purchaser of the mortgage, is bound by the notice of his assignor, even though it be conceded that he had no actual notice himself. The testimony is not entirely satisfactory in relation to the knowledge of Post, even conceding that his knowledge was the knowledge of the society. But it is earnestly urged by the appellant that the respondent McNamee, as the assignee of the mortgage, has no better or greater rights than his assignor, the bank, had; that he is the assignee of a mere chose in action, non-negotiable, for the assignment was made after maturity; that his right and title must be measured by the right and title of the person of whom he buys; that he takes it subject to the equities attending the original transaction; and that, if the mortgagee cannot himself enforce it, the assignee has no greater rights. And many cases are cited to sustain this doctrine. We have examined them all and find but very few which sustain the doctrine contended for. The most of the cases simply go to the extent that an assignee of a mortgage securing the non-negotiable or past due negotiable instrument takes it subject to all the equities of the mortgagor of which the mortgagee had notice. But few of the cases make the rule to apply to equities betwen the mortgagee and third persons. The rule, however, as contended for by the appellant, has been firmly established in the state of New York,

and that is the only state where we have been able to find cases reported which clearly sustain it. The rule was announced in New York as far back as *Bush v. Lathrop*, 22 N. Y. 535, and was reiterated as late as *Owen v. Evans*, 134 N. Y. 514 (31 N. E. 999), where it was flatly held that there was no distinction between the equities existing in favor of the debtor and those in favor of a third person. It is true that in *Sims v. Hammond*, 33 Iowa, 368, it was held that where a mortgagee, with actual notice of a prior mortgage on the premises, assigns the same to a person having no notice thereof, such assignee will be deemed as charged with the notice which his assignor had, and as standing in no better situation. But the supreme court of Iowa, in *Farmers' National Bank of Salem v. Fletcher*, 44 Iowa, 252, a case decided five years later, repudiated the doctrine announced in the former case,—rather, attempted to distinguish it by holding that the court in that case had based its opinion on the constructive notice of the mortgagee. The court in the course of its opinion, referring to this other case, said:

"The decision is based upon *English v. Waples*, 13 Iowa, 57, which turned upon constructive notice to the assignee. This court has never announced the broad doctrine that the *bona fide* assignee of a mortgage for value takes it subject to all the infirmities which attached to it in the hands of the mortgagee,"—

citing several cases in support of the proposition then decided, that the *bona fide* assignee of a mortgage for value does not take it subject to all the infirmities which attached to it in the hands of the mortgagee. Section 843 of Jones on Mortgages (5th ed.) is as follows:

"Whether the rule is limited to equities between the original parties is a question upon which different courts are not in accord. On the one hand, the rule that the assignee of a bond and mortgage, which are merely choses

in action, takes them subject to existing equities, is limited in its application to such equities only as existed between the mortgagor and mortgagee, and is not extended to those existing between the mortgagee and third persons;" citing many cases. "The reason for this limitation seems a strong one. 'The assignee,' says Chancellor Kent, 'can always go to the debtor, and ascertain what claims he may have against the bond, or other chose in action, which he is about purchasing from the obligee; but he may not be able, with the utmost diligence, to ascertain the latent equity of some third person against the obligee. He has not any object to which he can direct his inquiries; and for this reason the claim of the assignee, without notice of a chose in action, was preferred, in the late case of *Redfearn v. Ferrier,* to that of a third party setting up a secret equity against the assignor. Lord Eldon observed in that case that, if it were not to be so, no assignments could ever be taken with safety.' "

Then it is announced by the author that the settled rule in New York is to the contrary, and the case of *Bush v. Lathrop* is cited.

The following is from 15 Am. & Eng. Enc. Law, p. 860:

"So far as the latter are concerned it has been pointed out that an assignee can readily enquire from the mortgagee what claims he may have against the bond and mortgage which the assignee is about to purchase, but that he may not be able by the utmost diligence to obtain knowledge of the latent equity of some third person. For this reason, in certain states, the rule is well settled that the assignee is only bound by the equities existing between the mortgagee and the mortgagor. This is the law of New Jersey, Pennsylvania and Michigan."

And it is announced that a leading case in New York has established a contrary rule in that state.

It would be profitless to review all the authorities cited. We are satisfied that the great weight of authority is opposed to the doctrine contended for by the appellant, and, unless we are compelled by the weight of authority to ex-

tend the liability of the mortgagee beyond a responsibility for the equities existing between the mortgagor and the mortgagee, we are not inclined to do so.

We think the judgment of the court was right, and it will, therefore, be affirmed.

REAVIS, C. J., and FULLERTON, ANDERS and MOUNT, JJ., concur.