[No. 17268. *En Banc.* May 9, 1923.]

## MYERS-SHEPLEY COMPANY, *Respondent*, v. MILWAUKEE GRAIN ELEVATOR COMPANY, *Appellant.*[1]

CHATTEL MORTGAGES (19, 26)—FILING — TIME—EXECUTION OF MORTGAGE. A chattel mortgage is not "executed" until it is acknowledged and verified, within the contemplation of Rem. Comp. Stat., § 3780, requiring it to be recorded within ten days from the time of its execution.

SAME (13)—VALIDITY—DESCRIPTION OF PROPERTY. In view of Rem. Comp. Stat., § 3779, declaring a mortgage upon an unplanted growing crop void unless the crop is to be sown or planted within one year from its execution, a crop mortgage upon "all wheat grown, sown or raised" on certain land is not void for indefiniteness and uncertainty in failing to provide when the crop was to be grown, since that may be inferred; especially where the note secured, dated in January, 1920, was due September 1, 1920 (HOLCOMB, J., dissenting).

BILLS AND NOTES (64-1)—BONA FIDE HOLDER — NOTICE OF DEFENSES. Under Rem. Comp. Stat., § 3436, an undated indorsement of a note is presumed to have been before maturity in the absence of evidence to the contrary.

CHATTEL MORTGAGES (55-59)—ASSIGNMENTS—RIGHTS AND LIABILITIES—EQUITIES IN FAVOR OF THIRD PERSONS—NOTICE. A bona fide assignee before maturity of a crop mortgage is not charged with notice of an equitable lien on the crop for advances, or of admissions or statements made by the mortgagor to the party claiming such lien.

Appeal from a judgment of the superior court for Adams county, Truax, J., entered January 23, 1922,

[1]Reported in 214 Pac. 1051.

upon findings in favor of the plaintiff, in an action for conversion, tried to the court.   Affirmed.

*Adams & Miller* and *Hastings & Stedman (Donald G. Graham,* of counsel), for appellant.

*G. E. Lovell,* for respondent.

MAIN, C. J.—The plaintiff brought this action to recover the value of wheat which it claimed the defendant, the Milwaukee Grain Elevator Company, had converted by refusing to deliver it upon demand.   The cause was tried to the court without a jury, and resulted in findings of fact, conclusions of law and a judgment in favor of the plaintiff in the sum of $1,950.88.   The action as to the defendant W. J. Bennington was dismissed.   The Milwaukee Grain Elevator Company appeals.

The facts essential to an understanding of the questions involved are as follows:  In the year 1920, one George W. Castor was the tenant on a farm owned by Bennington, in Adams county.   By the lease, Bennington was to have one-third of the crop as rental, and Castor the other two-thirds for his labor in farming the land.   On January 22, 1920, Castor executed to the order of Bennington a note maturing September the 1st of that year for the sum of $1,906.69.   To secure this note, a chattel mortgage was executed by Castor to Bennington, dated January 22, 1920, acknowledged January 29 following, and filed for indexing on February 5, 1920.   The description of the property in the mortgage was ''all the undivided two-thirds interest in and to the wheat grown, sown or raised'' on the property therein described, which was land held by Castor under lease from Bennington.

At the time of the execution of the mortgage, about one-third of the acreage for the 1920 crop had been

sown, and the remaining two-thirds were sown in March following. The mortgage was given to cover an indebtedness created by the fact that Bennington had furnished to Castor seed wheat. The note bears the indorsement, "Pay to Myers Shepley Company W. J. Bennington." Subsequently the appellant advanced money to Castor to pay harvesting and threshing expenses, and the wheat was delivered to the appellant's elevator or warehouse. The respondent subsequently made a demand upon the appellant, which was refused, and thereafter the present action was begun for the conversion of the wheat. The respondent claims a prior right by reason of the transfer to it of the note secured by the chattel mortgage. The appellant claims a superior right, basing its contention upon the claimed invalidity of the chattel mortgage and the consent of Bennington that its claim should be superior.

It is contended that the mortgage is void as against the appellant because it was not filed in the office of the county auditor within ten days from the time of its execution. The statute requires that a chattel mortgage be filed within ten days from the time of its execution, in the office of the county auditor of the county in which the mortgaged property is situated. Rem. Comp. Stat., § 3780. The mortgage is dated January 22, 1920. It was verified and acknowledged on the 29th day of that month, and was filed for record on the 5th day of February following. If the date at the top of the instrument is to be taken as the execution date, then the mortgage was not filed within ten days. On the other hand, if the mortgage was not executed until it was verified and acknowledged, the filing for record was within time. In *Fenby v. Hunt*, 53 Wash. 127, 101 Pac. 492, it was held that a chattel mortgage dated December 9, but not delivered until

December 13, was not executed until the latter date, and was filed within ten days from the execution thereof if filed on December 21. It was there said:

"The date of the mortgage, December 9, did not alone determine its 'execution,' as that word is understood and interpreted in statutes of a like character. The execution of a chattel mortgage means and includes the doing of those formal acts necessary to give the instrument validity as between the parties. There certainly could be no validity to a mortgage without a delivery and acceptance. One cannot be made a mortgagee unless there is some act on his part which can and does express his relation to the instrument. There must be a 'meeting of the minds' in this sort of relation as in any other contract. Without these formalities there is no mortgage. Jones, Chattel Mortgages, p. 104.

"The word 'execute,' when applied to a written instrument, unless the context indicates that it was used in a narrower sense, imports the delivery of such instrument. . . ."

In *State v. Dana*, 59 Wash. 30, 109 Pac. 191, it was held that a deed is presumed to be executed and delivered on the date of its execution and acknowledgment. The mortgage in question in the case now before us was not executed as contemplated by the statute until it was verified and acknowledged; and there can be no presumption that it was delivered prior to that time. The fact that the mortgage was dated on a particular day does not necessarily determine the day or time of its execution.

It is next claimed that the mortgage was void by reason of the uncertainty of the description of the property covered by it. The mortgage covered the undivided two-thirds interest in and to the wheat sown, grown or raised on certain described property, but did not specify the year in which it was to be sown, grown or raised. The question here, then, is whether the

mortgage, failing to specify the year, was fatally defective and void as against the appellant. Section 3779, Rem. Comp. Stat., among other things, provides that the mortgage of crops before the seed thereof shall have been sown or planted is forbidden, and all securities and mortgages covering such unsown or unplanted crops are "declared void and of no effect, unless such crops are to be sown or planted within one year from the time of execution of the mortgage." Here is a prohibition against mortgaging crops not sown at the time of the execution of the mortgage, unless such crops are to be sown or planted within one year from the time of the execution thereof.

The appellant cites a number of cases where it has been held in other jurisdictions that a chattel mortgage upon crops not sown at the time the mortgage is given is void as to third persons where it did not specify the particular year that the crops were to be grown. In *Pennington v. Jones,* 57 Iowa 37, 10 N. W. 274, the chattel mortgage involved was executed on the first day of February, 1879, and covered crops to be raised on leased land. The mortgage did not specify the year. It was there held that the mortgage was too indefinite and uncertain because the "defendant could just as well conclude the mortgage covered the crops of some other year (than those grown in 1879), for the plaintiff could just as well claim crops grown in 1880 or 1881 as those of 1879." In none of the cases cited is there a statute referred to such as that above quoted, which makes a chattel mortgage upon a crop to be sown or planted void unless such crop is to be sown or planted within one year from the time of the execution of the mortgage. Under this statute, a person could not claim a lien upon a crop during a subsequent year, as was indicated in the opinion of *Pennington v. Jones, supra,* might be done if the mort-

gage did not specify the year, and therefore the reason upon which that decision is based disappears. The other cases cited are to the same effect and it does not seem necessary to enter into a detailed review of them at this time. In making the mortgage, even with the year left blank, it cannot be presumed that the parties intended to cover a crop subsequent to the year 1920, and which mortgage would be void under the statute, while a mortgage covering that crop would be valid. In 11 C. J. 469, it is said:

"It is sufficient that the time or year of growth may be inferred from the terms of the mortgage, although not stated in express language."

The fact that the note secured by the mortgage was due on September 1, 1920, would tend to indicate that it was the crop of that year that was to furnish the security. In *Taylor v. Hodges,* 105 N. C. 344, 11 S. E. 156, it is said:

"The inference is, therefore, unmistakable that the crop of the year 1887 was that referred to and conveyed by the deed, and that construction is supported by the fact that the note secured was payable on the 1st day of October of that year, when the crop was maturing daily."

The failure to specify the year when the crop was to be grown which was covered by the mortgage is not a defect which makes the mortgage void for indefiniteness or uncertainty.

It is next claimed that the respondent should be held to have taken the note secured by the mortgage with notice of the appellant's equity. The note bears upon its back simply the indorsement, "Pay to Myers Shepley Company  W. J. Bennington," and there is no date showing the time of the indorsement. Section 3436, Rem. Comp. Stat., provides that, except where an indorsement bears date after the maturity of the

instrument, "every negotiation is deemed *prima facie* to have been effected before the instrument was overdue." The note was due on September 1, 1920, and under the statute, there being no evidence to the contrary, it is deemed *prima facie* to have been indorsed and delivered prior to that time.

It is next contended that the appellant, having advanced money to pay for the harvesting and threshing of the wheat, is in the same position as a purchaser for value, and that the respondent was charged with notice of appellant's rights therein. This contention is based in part at least upon the assumption that the respondent acquired the note and mortgage after maturity; but the evidence will not justify such a holding. There is also upon this branch of the case considerable discussion in the briefs, and especially in the appellant's briefs, of the evidence relating to conversations with Bennington wherein he is said to have recognized and agreed that the appellant should have a superior right. What the fact may be as to these conversations it is not necessary to determine, because the respondent would not be charged with what Bennington may have said or done in conversations with representatives of the appellant. Knowledge of Bennington, the mortgagee, that a third party had an equitable lien, would not affect the rights of the respondent unless it had notice, actual or constructive. In *Congregational Church Building Society v. Scandinavian Free Church of Tacoma,* 24 Wash. 433, 64 Pac. 750, it was held that:

"A *bona fide* assignee of a mortgage for value, although assigned to him after its maturity, is not chargeable with the knowledge of his assignor as to the existence of a prior mortgage, since the rule that the assignee of a mortgage takes it subject to existing equities applies to such equities only as exist between the mortgagor and mortgagee and not to those existing

between the mortgagee and third persons.'' (Syllabus.)

In *Keene Guaranty Savings Bank v. Lawrence,* 32 Wash. 572, 73 Pac. 680, it was held that knowledge on the part of the assignor of a mortgage that a third party had an equitable lien against the premises would not affect the rights of an assignee who took without knowledge, actual or constructive, of the rights of such third party. If Bennington did agree or promise that the appellant's claimed rights might be superior, this would not be controlling as against the respondent, to whom the note and mortgage had been transferred by the indorsement of the note; since the evidence does not justify a finding that the respondent took with notice either actual or constructive.

The judgment will be affirmed.

FULLERTON, PARKER, TOLMAN, MITCHELL, MACKINTOSH, BRIDGES, and PEMBERTON, JJ.; concur.

HOLCOMB, J. (dissenting)—I dissent from the decision that the chattel mortgage was not void under Rem. Comp. Stat., § 3779, as to the wheat not then sown and growing at the time of the execution of the mortgage.