[No. 17851.   Department Two.   October 4, 1923.]

M. J. WILLETT et al., Appellants, v. CENTRAL YAKIMA RANCHES COMPANY et al., Respondents.[1]

ASSIGNMENTS (26)—CONTRACTS—RIGHTS OF THIRD PERSONS—BONA FIDE ASSIGNEES—NOTICE OF DEFENSES. Where an assignment of a contract of sale disclosed on its face that it was given as security for a specified debt of the assignors, subsequent purchasers and assignees are charged with the knowledge of the first assignee that his rights were subject to defeat by a compliance with the conditions, or by failure of consideration for the contract which the assignment was given to secure.

Appeal by plaintiffs from a judgment of the superior court for Benton county, Truax, J., entered March 31, 1922, in favor of the plaintiffs, in an action for rescission, tried to the court. Reversed.

[1]Reported in 219 Pac. 20.

*McGregor & Fristoe* and *Lee C. Delle,* for appellants.
*Andrew Brown,* for respondents.

FULLERTON, J.—On May 22, 1920, the appellants, Willett, contracted to purchase from the defendant Central Yakima Ranches Company, a corporation, for the sum of $13,500, a specifically described tract of land situated in Benton county. At the time of the execution of this contract, $2,000 was paid upon the purchase price, and later on an additional $500 was paid. To evidence the deferred payments, promissory notes were given in varying amounts, the last of which became due on December 1, 1925. Prior to the execution of the contract, the appellants had owned a tract of land and certain personal property situated in the Province of British Columbia, which they had contracted to sell to Susan, John L. and Charles E. Needoba on a deferred payment plan, and had taken from the contract purchasers a written contract expressing the terms of the payments. On this contract there was then due the sum of $3,000. This contract was assigned to the Central Yakima Ranches Company by the appellants as security for the payment of the first of the promissory notes to become due. The assignment was in writing and expressly provided that it was given "for the purpose of guaranteeing" the note mentioned.

One Aron H. Hover and one Fred H. Gaston were, respectively, president and secretary of the Central Yakima Ranches Company. On May 22, 1920, they caused the company to assign to themselves as individuals the British Columbia contract, executing the assignment in their official capacities. On the same day they borrowed from the Prosser State Bank the sum of $5,000, and assigned the contract, the Willett

notes, and other securities, as security for the loan. There was, however, no indorsement of the notes. They passed to the bank under the general assignment made of the contract. Attached to the assignment made by the Willetts was a copy of the original contract of purchase entered into between the Willetts and the corporation, and this passed into the possession of the bank.

· Later on the Willetts, conceiving that they had been defrauded in the purchase of the Benton county property, began the present action to rescind the contract of sale. They named as one of the parties defendant the Prosser State Bank, and, as against it, sought a return of the contract evidencing the sale of the property in British Columbia. The trial court, on the main issues of the case, held with the Willetts. It found the transaction between them and the ranches company to be fraudulent, and entered a decree of rescission. It held, however, that the bank had a lien on the contract mentioned superior to the claim of the Willetts for the amount remaining due upon the note of Hover and Gaston to it. This amount it found to be $1,617.91, and impressed a lien on the contract for that sum with the accruing interest; directing that, on the payment of that sum to the bank, the contract be surrendered to the Willetts. The appeal presents only the correctness of the conclusion and decree of the court with reference to this contract.

It is the general rule, applicable to non-negotiable choses in action, that the vendor of personal property can convey to his vendee no higher or greater right or title thereto than he himself possesses. But this rule is subject to the qualification of another rule equally general, namely: that, where a vendor of such property clothes his vendee with title apparently absolute,

and the vendee sells the property to an innocent third person, the third person takes the title free from any claim of the first vendor. The title of the second purchaser in such a case does not depend upon the actual title or authority of the party with whom he directly deals, but from the act of the real owner; his act in vesting apparent power of disposition in the person with whom he deals. The rule in its essence is only another application of the principle of estoppel. The wrong as between the first vendor and the third person is with the first vendor. It was within his power to protect himself, and, if through negligence or mistaken confidence he does not do so, he cannot visit the wrong upon the innocent vendee who has been misled by his act. 3 R. C. L., p. 1035; *McNeil v. Tenth National Bank,* 46 N. Y. 325; *Cowdrey v. Vandenburgh,* 101 U. S. 572; *Township of Washington v. First National Bank of Huntington,* 147 Mich. 571, 111 N. W. 349, 11 L. R. A. (N. S.) 471; *Boice v. Finance & Guaranty Corporation,* 127 Va. 563, 102 S. E. 591, 10 A. L. R. 654.

The following cases from this court, although perhaps not directly in point, recognize the principle: *Congregational Church Building Society v. Scandinavian Free Church,* 24 Wash. 433, 64 Pac. 750; *Keene Guaranty Savings Bank v. Lawrence,* 32 Wash. 572, 73 Pac. 680; *Myers-Shepley Co. v. Milwaukee Grain Elevator Co.,* 124 Wash. 583, 214 Pac. 1051; *Bank of California v. Danamiller,* 125 Wash. 255, 215 Pac. 321.

The trial court found that the respondent bank had no notice or knowledge of the fraud of its assignors by which they had obtained possession of the contract of sale, and we find nothing in the record which would warrant a contrary conclusion. On the part of the

bank it was but a usual and ordinary business transaction. It made a loan of money to the assignors and took an assignment of the contract, with other securities, as security for its' payment. So, had the transaction been an absolute assignment of the contract to the bank's assignors in the first instance, and had these assignors transferred it to the bank by title absolute or as security for a loan, there would seemingly be no question as to the bank's right to the property as against the present claim of the appellants.

But the title of the bank's assignors to the property was not absolute. They held it as security for a debt under an assignment in writing which expressed on its face the terms and conditions of the assignment. In the hands of the first assignees the assignment was subject to be defeated by a failure of the consideration which gave rise to the assignment. When it was shown that there was no consideration, their rights therein ceased, and the contract was subject to be returned to its true owners. The question then is could they convey any higher or greater right upon the bank. It is our opinion that they could not. It is only where the claim of the real owner of personal property is not disclosed that the apparent owner can convey a better right or title to it than he has himself. In this instance the claim of the real owner was disclosed. It appeared on the face of the assignment that it was given to secure the payment of a specified debt evidenced in a particular manner. Any subsequent taker was, therefore, charged with the knowledge of the rights of the first assignee, and charged with knowledge that his rights were subject to defeat by a compliance with the conditions under which he held it; in this instance, a failure of the consideration for the obligation which the contract was assigned to secure.

Again, the title of an assignee to a non-negotiable chose in action, assigned to secure the payment of an obligation, can rise no higher than its source. In this instance, as we have stated, the assignment was made by the original owners to secure the payment of a specifically described promissory note. This note, while delivered to the bank by the assignees, was not indorsed by them. Under the almost universal rule, the bank took the note subject to all of the defenses that attach to it in the hands of the original payee. (See note to *First Nat. Bank v. McCullough,* 50 Ore. 508, 93 Pac. 366, 126 Am. St. 758, 17 L. R. A. (N. S.) 1105). Since the contract was but ancillary to the note, the bank took it subject to all the defenses that could be made against the note.

It is our conclusion that the court was in error in impressing a lien upon the contract in favor of the bank. The judgment will be reversed and remanded to modify it in this respect, with the further direction to cause the contract to be delivered to the original owners.

Main, C. J., Parker, Tolman, and Pemberton, JJ., concur.