[No. 22275. Department One. April 14, 1930.]

GUS KAMHOLTZ et al., *Respondents,* v. AMERICAN FRUIT GROWERS, INCORPORATED, *Appellant.*[1]

[1]Reported in 287 Pac. 5.

*Harcourt M. Taylor,* for appellant.

*Parker & Parker,* for respondents.

TOLMAN, J.—This is an action in conversion. The case was tried to a jury, and on its verdict for $926.01 a judgment was entered from which the defendant has appealed.

It appears that on May 6, 1927, respondents gave a crop mortgage to the Lampert Implement Co., of Yakima, Washington, covering twenty tons of No. 1 potatoes, to be properly sorted and sacked, which were to be grown during the season of 1927 on certain described land, to secure the payment of $250 and interest. In the fall of that year, at a conference between the parties to the mortgage, Mr. Lampert, representing the implement company, in the presence of the mortgagors, dictated an agreement which was immediately transcribed and signed and is as follows:

"LAMPERT IMPLEMENT CO.

"Yakima, Washington

"Oct. 29, '27.

"For value received, receipt of which is hereby acknowledged, we set over, bargain and sell to the Lampert Implement Company free from debt, twenty tons Number one spuds, properly sorted and sacked, as described in a chattel mortgage given to the above firm dated May 6, 1927. These spuds to be delivered during the fore part of next week to the American Fruit Growers warehouse in Wapato. This bill of sale is given for the purpose of transferring title from the above mortgage, as well as mortgage given June 19, 1926, a balance of which is yet unpaid. This bill of sale is for No. 1 spuds or its equivalent.

"Sig. Gus Kamholtz,

"Milton Firoved."

Within a very few days, the Lampert Implement Co. transmitted this bill of sale to the appellant with a letter of directions which is as follows:

"Lampert Implement Co.
"Yakima, Washington
"Nov. 5, '27.
"American Fruit Growers Ass'n,
"Wapato, Wash.
"Gentlemen:

"As a matter of convenience for your files and due notice, we wish to inform you that on October 29, 1927, Mr. Gus Kamholz and Milton Firewood signed a bill of sale for twenty (20) tons of No. 1 spuds or their equivalent, properly sorted and sacked and delivered this week just closing to your warehouse in Wapato.

"We would appreciate very much if you will properly record this and see that in due course of time our interest in the above spuds are safeguarded.

"Yours truly,
"Lampert Implement Co.,
JCL—B.                    "Per John C. Lampert."

In January, following, the Lampert Implement Co. directed the sale and shipment of the potatoes in which they were thus interested by letter to appellant which reads:

"Jan. 30, '28.
"To Amer. Fruit Growers,
"Wapato:—

"You are hereby authorized to sell spuds as covered by bill of sale filed with you transferring title from Kamholz & Firwood to Lampert Implt. Co. for $10 per ton to Sakai and remit to us the net after sacks sorting & storage *have paid*. Time is the essence of this authority & must be concluded at once or cancel this authority. We hereby guarantee our title to Amer. Fruit Co.

"Lampert Implt. Co.
"Per John C. Lampert."

In the meantime respondents had harvested their crop of potatoes and stored the whole thereof, field run, in bulk, in appellant's warehouse at Wapato. The amount in tons so stored is in serious dispute, respondents claiming that they thus stored with appellant be-

tween 180 and 190 tons, while appellant offered substantial evidence to the effect that the amount was actually less than 145 tons.

On receipt of the order from the Lampert Implement Co. to sell and ship twenty tons of No. 1 potatoes, or the equivalent, appellant appears to have disposed of the whole crop which it received from the respondents and stored, less six or seven tons which they reserved for seed, and less a couple of tons which they had theretofore removed. It appears that the potatoes could not be sorted and graded so as to produce a No. 1 grade without too great a loss, and it is apparently admitted that appellant properly sorted so as to produce what is called a 60-40 grade, or a combination containing 60% of No. 1 and 40% of No. 2 grade, which is a recognized grade in the trade and usually sells at something like $5.00 per ton less than No. 1. There is no claim of improper sorting or grading.

In the trial below, one of the points of difference was the legal effect of the so-called bill of sale made by respondents to the Lampert Implement Co., and the trial court submitted that question to the jury under certain instructions. This, we think, was error, because, even after considering all of the testimony explanatory of the intention of the parties, we are still convinced that no issue was raised, and that there is nothing therein which alters or affects the plain meaning to be gathered from the face of the instrument and the chattel mortgage to which it refers, particularly so as against appellant to whom the instrument was transmitted by the Lampert Implement Co. Without doubt, appellant had a right to accept the bill of sale at its face value and to ship on the order of the Lampert Implement Co. to the extent of twenty tons of No. 1 potatoes, or the equivalent thereof, and so far as it did

so, it would not be liable to respondents, and the jury should have been so instructed.

Having clothed the implement company with apparent title, the respondents are estopped from disputing the right of appellant to act thereon. 26 R. C. L. 1144-5; *Willett v. Central Yakima Ranches Co.*, 126 Wash. 587; 219 Pac. 20; *Fuller & Co. v. Longmire*, 97 Wash. 254, 166 Pac. 623, 7 A. L. R. 674.

The trouble here is, however, that the Lampert Implement Co. was the owner, or mortgagee in possession with the right to sell, of only twenty tons of No. 1 potatoes, or the equivalent. The evidence tends to show that at the time of the sale No. 1 potatoes were worth something like $16 per ton, and therefore twenty tons would be worth $320. The 60-40 grade was worth from $10 to $11 per ton, and it would take approximately thirty tons of the 60-40 grade to be the equivalent of twenty tons of No. 1.

Lampert Implement Co., having the title at the time the potatoes were stored, or at least a right to possess and to sell, became of course liable for the storage charges on its potatoes, or on thirty tons of 60-40 grade which it was authorized to sell. But it was entitled to its potatoes "properly sorted and sacked," and enough in addition to the thirty tons to pay for sorting and sacking might properly be sold on its order. So far as the sales went beyond this, and it is apparently admitted that they did go beyond to the extent of disposing of the whole crop, so far as it was marketable, they were wholly unauthorized, and to that extent appellant is liable to the respondents. Hence, the motions for a directed verdict and for judgment *n. o. v.* were properly denied.

This case has already been twice tried, each time to a jury, and we would gladly end the controversy here and now were we authorized to do so, but in any event

we can point the way for what seems to us a fair settlement between the parties, and our doing so may be some guide to the trial court if another trial becomes necessary.

This verdict and judgment cannot, in any event, stand, because it is undoubtedly based upon a finding by the jury that the Lampert Implement Co. had no title and no right to sell and that the whole crop was wrongfully converted. As we have already seen, Lampert Implement Co. had title, or right to sell, to the extent indicated, and in any event appellant was justified in so believing, hence, the sale of thirty tons of 60-40 grade and so much more as would be required to pay for sorting and sacking was fully justified. Taking respondents' evidence at its best and giving them the utmost that they claim as to the balance over and beyond what appellant was authorized to sell, as we have already indicated, we cannot see any justification for a verdict in their favor for more than from $425 to $450. Appellant practically invites us to direct a judgment for that amount, but we doubt the advisability of inaugurating such a practice.

Because of the error in instructions, the judgment is reversed with directions to grant a new trial.

MITCHELL, C. J., PARKER, BEALS, and MILLARD, JJ., concur.