[No. 33239. Department One. October 27, 1955.]

EINAR GLASER *et al.*, *Appellants*, v. MARGUERITE L. CONNELL, *Respondent and Cross-appellant.*[1]

*Wright & Wright*, for appellants.

*Malcolm S. McLeod* (*William F. White*, of counsel), for respondent and cross-appellant.

DONWORTH, J.—The decision in this case depends upon a determination of the question whether Einar Glaser is a holder in due course of a certain promissory note executed by Marguerite L. Connell, payable five years from its date to the order of Holdorf Oyster Corporation in the sum of sixteen thousand dollars. Mrs. Connell (hereinafter referred to as respondent) admits having executed the note in question. The note is secured by a mortgage on certain real property in the city of Seattle, which now constitutes her

[1]Reported in 289 P. (2d) 364.

place of abode. She claims that the note (and mortgage) was obtained from her as a result of fraud practiced on her by one Errion, an agent for Holdorf Oyster Corporation, and by the officers thereof acting as conspirators.

Einar Glaser (hereinafter referred to as though he were the sole appellant) commenced this action by filing a complaint alleging that respondent made, executed, and delivered her note to the Holdorf Oyster Corporation; that the payee, by its president, Dwight Holdorf, and secretary, Opal Holdorf, endorsed the note, by their signatures on the reverse side thereof, and delivered it to appellant for a valuable consideration; that appellant purchased the note in good faith and for value before maturity; that demand had been made for payment; that the face amount of the note, together with interest, is due and owing, and prayed for a judgment on the note, together with interest, costs, and attorney's fees, and for an order of sale foreclosing the mortgage (which was assigned by Holdorf Oyster Corporation to appellant).

As stated above, the note in question was made payable to the order of "HOLDORF OYSTER CORPORATION" and is inscribed on the reverse side thereof as follows:

> "Pres. Dwight Holdorf
> "Sec. Opal Holdorf"

(The words "Pres." and "Sec." are typewritten, and the names of the officers are signed in ink.)

Respondent's answer admits execution of the note and mortgage, denies all other allegations of the complaint, and pleads eight affirmative defenses to the action. One of the defenses is that appellant is not a holder in due course of the note, because the purported endorsement of the corporate payee is defective. All of the affirmative defenses were denied in the reply.

Since the answer denied the allegations of the complaint relative to the making of the corporate endorsement, appellant was put to his proof as to this issue. This proof consisted mainly in testimony tending to show that, at the time of the transfer of the note, the two persons attempting to

endorse were, in fact, officers of the corporation as indicated, and that their signatures were genuine.

After a trial to the court sitting without a jury, the court rendered a memorandum opinion wherein it said, in part:

"The defendant filed an answer herein on February 5, 1954, in which she entered general denials as to the allegations of the complaint, except she admitted executing a note and mortgage on a date unknown, and sets up eight affirmative defenses, which are a conglomeration of all sorts of defenses, repeated over and over again, such as fraud, misrepresentation, conspiracy between plaintiffs and parties by the name of Errion and Holdorf, and pleading the plaintiffs' rights in the note and mortgage were subject to all the above-mentioned defenses because they were not holders in due course. . . .

"It may be that fraud has not been sufficiently made out to render the mortgage void, but clearly the plaintiff has failed to show that he is a holder in due course in this transaction.

"In paragraph II he alleges, as we have seen, that the Holdorf Oyster Corporation endorsed the note to plaintiffs. The answer denies this, and the burden was on plaintiffs to prove it. It will be noted that on the back of the note . . . the Holdorf Oyster Corporation is not mentioned. The only endorsement are the words, 'Pres. Dwight Holdorf, Sec. Opal Holdorf.' Title to a note does not pass by delivery alone. RCW 62.01.030, 62.01.031 and 62.01.049 have not been complied with. An examination of the assignment . . . shows that the mortgage only is assigned, but not the note. Therefore, the Holdorf Oyster Corporation is still the owner of the note.

" . . . The proper parties are not before the court. This being so, the action will have to be dismissed without prejudice and with costs.

"It is true, under the statute, as provided in RCW 62.01-.049, that the endorsee can compel the holder to endorse the note, but this only takes effect as of the time when the endorsement is actually made. *Hanson v. Roesch*, 104 Wash. 257."

Findings of fact, conclusions of law, and judgment were made and entered accordingly, dismissing the action without prejudice and with costs.

Appealing from the judgment entered, appellant assigns error to the judgment and to three findings of fact made by the court. These findings read:

"8. That at the time plaintiffs paid the said $16,000.00 to Holdorf Oyster Corporation on or after August 8, 1951 they intended and were in fact loaning said sum of money to E. R. ERRION and not purchasing said promissory note and mortgage as an investment or otherwise from Holdorf Oyster Corporation and plaintiffs took possession of said note and mortgage not as purchasers or owners thereof but as temporary holders of same for purposes of the said E. R. ERRION.

"9. That at no time did Holdorf Oyster Corporation deliver, transfer, endorse-over or assign the promissory note . . . to the said plaintiffs nor did it receive any consideration for doing so. That it did, however, receive the sum of $16,000.00 for the said E. R. ERRION.

"10. That the plaintiffs, and each of them, are not holders in due course of . . . said promissory note . . ."

Respondent, while urging that the judgment entered should be affirmed, has "only as a precaution" cross-appealed, arguing that if the judgment is reversed, the cause should be remanded for a new trial on the ground that the court erred in refusing the admission of certain evidence offered by respondent.

It should be noted that respondent does not complain of the judgment entered and that appellant did not ask the trial court to consider him as an assignee of the note and grant relief accordingly. In finding No. 6, the court expressly refrained from making any finding with regard to whether or not the note and mortgage were executed by respondent as a result of fraud as alleged in the affirmative defenses.

Appellant recognizes that, in order to sustain his claim as a holder in due course, he must establish the corporate endorsement as a fact. To accomplish this end, appellant cites cases involving § 20 of the Uniform Negotiable Instruments Law, which hold that, where the form of the instrument is such as to fairly indicate on its face that the *maker* signs in a representative capacity, such person will be relieved of personal liability (if he acted within the scope of his au-

thority) and the corporate principal will be held liable as the *maker* of the note. We have examined these cases, but we are of the opinion, however, that they do not sustain appellant's theory on which he bases his claim that he is a holder in due course. Appellant states this theory on page 13 of his opening brief, where it is said:

"Appellants recognize that the cases heretofore referred to concern rules of non-personal liability by corporate agents, but their reasoning is persuasive. It is the necessary corollary of the rule of non-personal liability which supports appellants' position here, *i.e.*, that where an endorsement by authorized corporate agents does not result in their *personal* liability, the liability of the *corporation* on the endorsement must arise. It is this corollary rule which applies to this appeal, for if Holdorf Oyster Corporation is liable upon the endorsement, then appellants are the owners of a validly endorsed note and were the proper parties plaintiff in the court below. . . ."

In support of this theory, appellant cites *Falk. v. Moebs*, 127 U. S. 597, 32 L. Ed. 266, 8 S. Ct. 1319, as being on all fours with this case and, therefore, controlling. That case involved a note reading " . . . pay to the order of Geo. Moebs, Sec. & Treas., . . . . [signed] PENINSULAR CIGAR Co., Geo. Moebs, Sec. & Treas." The note was endorsed as "Geo. Moebs, Sec. & Treas." The decision of the supreme court in that case held, in an action against Moebs, that the endorser was not personally liable because the maker, the payee, and the endorser were, in fact, the corporation. We agree with that decision, but cannot see how it can have any analogous application to the instant case. On the facts alone, it is not authority for the theory here urged by appellant.

*Akers v. Sinclair*, 37 Wn. (2d) 693, 226 P. (2d) 225 (also referred to by appellant), was a suit in equity, seeking to reform three promissory notes on the ground of mutual mistake, and thus relieve the *maker* of personal liability. We can see nothing in that case as supporting the theory urged by appellant that the endorsement in this case is, on its face, a valid corporate endorsement.

Parenthetically, the fact that the president and secretary of Holdorf Oyster Corporation knew how to properly endorse instruments payable to the order of the corporation is clearly demonstrated by the fact that there are in evidence (but not for that purpose) seven cashier's checks payable "to order" which were properly negotiated by these same corporate officers.

"One of the most vital and distinctive characteristics of a negotiable instrument and uniformly held to be the most important characteristic of such instrument, is termed its negotiability. The term implies a transferable quality in the instrument to which it is applied. . . . Possessing the attribute of negotiability, commercial paper may pass from hand to hand and be accepted as a substitute for money by holders in due course, regardless, except in rare cases, of defenses that might obtain between the original parties." Ogden, Negotiable Instruments (5th ed.) 44, § 33.

If a note is payable "to order", it is negotiated by the endorsement of the holder completed by delivery. RCW 62.01.030. The endorsement must be written on the instrument itself or upon a paper attached thereto. RCW 62.01-.031. The endorsement is an additional contract on the instrument and generally will enhance the stability of the note. See RCW 62.01.066.

"The literal meaning of indorsement is writing on the back, derived from the Latin *indorsa*. In this connection, the word is used to indicate a legal transaction, effected by a writing of one's own name on the back, whereby one not only transfers one's full legal title to the paper transferred, but likewise enters into an implied guaranty that the note or instrument will be duly paid. . . . The indorsement cannot be by parol and the proper place for writing it is on the back of the instrument." Ogden, Negotiable Instruments (5th ed.) 183, § 112.

When a negotiable instrument is payable to order, an endorsement by the payee is essential to constitute the transferee a holder in due course. *Willett v. Central Yakima Ranches Co.*, 126 Wash. 587, 219 Pac. 20. The vital issue on this appeal, then, is whether the note in question was endorsed by the corporate payee. The name of the payee of

the note is not included in the purported endorsement. The similarity between the name of the payee corporation and the surnames of the officers who signed on the back of the note does not give rise to any legal inference that it is a corporate endorsement. Nor can the payee's endorsement be supplied by mere proof of an intent to negotiate.

"One who is the holder of negotiable paper payable to his order and who transfers it for value without indorsing it, vests in the transferee such title as he had, and in addition to this, the transferee acquires the right to have the transferor's indorsement. Thus such an instrument payable to the order of A may be effectually transferred by mere delivery, and the assignee takes the legal title and may sue in his own name subject to defenses of prior parties. The negotiation takes effect as of the time when the indorsement is actually made when it is necessary to determine whether the transferee is a holder in due course, thus the indorsement is required to constitute the transferee a holder in due course. And an intention by both parties to have the paper indorsed is not sufficient, as it is the act of indorsement, not the intention, which negotiates the instrument." Ogden, Negotiable Instruments (5th ed.) 206, § 126.

Appellant has failed to sustain his burden of proof on the vital issue of whether the note was endorsed by the payee so as to constitute the transferee a holder in due course. A holder in due course of negotiable paper enjoys certain privileges and immunities which the transferee of an unendorsed order instrument does not have. A holder in due course of such paper need look no further than the instrument itself to ascertain how much, when, and from whom a sum can be demanded. On the note involved in this case, however, any party to whom it is presented would have to resort to facts extrinsic of the instrument to ascertain whether the purported endorsement of the instrument was made by the named corporate payee.

In our opinion, the endorsement is defective as a corporate endorsement, and since a proper endorsement is lacking, appellant is not a holder in due course. *Willett v. Central Yakima Ranches Co., supra.*

We do not find it necessary to discuss the findings which

are challenged in the assignments of error. The first two relate to facts which we have found are not material in this case. Finding No. 10 is, in effect, a conclusion of law, with which we are fully in agreement. For the reasons stated above, we hold that the trial court was correct in dismissing appellant's action without prejudice.

On the appeal, the judgment is affirmed, and since the cross-appeal was merely taken in the alternative in the event that the judgment should not be affirmed, no specific disposition of it is required or made. Respondent will recover her costs in this court.

HAMLEY, C. J., SCHWELLENBACH, and FINLEY, JJ., concur.

OTT, J., concurs in the result.