[No. 6053–1–II. Division Two. March 16, 1984.]

EDWARD J. FINES, ET AL, *Respondents,* v. EUGENE A. STOCK, ET AL, *Appellants.*

*Eugene A. Stock,* pro se.

*Pamela D. Larson,* for respondents.

PETRIE, J.—Defendant, Eugene A. Stock, appeals a summary judgment in favor of plaintiffs, Fines, Gunston and Hannah, respectively, in the amount of principal balances due each plaintiff on three promissory notes. We reverse.

On March 28, 1977 Stock, as maker, executed three promissory notes payable to the order of Stillaguamish Estates, Inc., in the principal amount of $20,000 each, payable in full no later than 1 year from date. On the reverse side of each of these notes there is an endorsement to Viking Financial Services, Inc., signed simply "Richard T. McClain." On the reverse side of a fourth note, also executed by Stock on the same date and also payable to the order of Stillaguamish Estates, Inc., beneath Richard T. McClain's signature as an endorsement to Viking Financial Services, Inc., are the typed words "Richard T. McClain, President." The validity of that note and its endorsement is not at issue in this appeal.

Also on March 28, 1977 Stock executed three deeds of trust on three separate parcels of property in Grays Harbor

County, with beneficiary designated as Stillaguamish Estates, Inc., a Washington Corporation. Each deed indicated that it was given to secure payment of a promissory note of even date. On the same date Richard T. McClain, purportedly as beneficiary, executed assignments of these three deeds of trust, assigning his interest to Viking Financial Services, Inc. Again McClain's signature is unaccompanied by any indication of any relationship to Stillaguamish Estates, Inc. However, the notary public before whom McClain signed certified that McClain was known to him (the notary) to be the president of Stillaguamish Estates, Inc.

There is no indication in the record that any document was attached to either note; but, within a year of March 28, each note was endorsed by Viking as payable to the order of one of the three plaintiffs. Viking also assigned the deeds of trust to plaintiffs. Viking's endorsements and assignments were executed through Keith R. Fryer, its president.

Plaintiffs sued Stock for the balances due on their respective notes and to foreclose the trust deeds. Stock's answer to the complaint, if any, was not listed as a document considered by the trial court in granting plaintiffs' motion for summary judgment. Neither, of course, is it before us on this appeal. However, in response to plaintiffs' motion, Stock averred that he signed the notes only after he was assured by Fryer that "I would not have to make any payments on the Note. . . ." Stock also asserted that plaintiffs were not the owners and holders of the notes "because there is no endorsement by Stillaguamish Estates, Inc., the original payee."

We have not been favored with the trial court's analysis of why summary judgment was granted, but on appeal plaintiffs assert that they are holders in due course; and, accordingly, any agreement between Stock and Viking (through Fryer) would not be a defense available to Stock because (1) the record fails to show they had any notice of the agreement, and (2) the agreement, if made, was between the maker and second holder, not the original

payee (first holder).

█ █ We start with the categorical holding that plaintiffs were not holders in due course. *Glaser v. Connell,* 47 Wn.2d 622, 289 P.2d 364 (1955). Though decided prior to enactment of the Uniform Commercial Code, RCW Title 62A, the subsequent enactment of the code does not change the result of *Glaser v. Connell, supra. See* Cosway, *Negotiable Instruments and the UCC,* 38 Wash. L. Rev. 719, 739–40 (1963); 2 R. Anderson, *Uniform Commercial Code* § 3–202:26, at 770 (2d ed. 1971).

RCW 62A.3–302(1) provides:

(1) A holder in due course is a holder who takes the instrument
(a) for value; and
(b) in good faith; and
(c) *without notice* that it is overdue or has been dishonored or *of any defense* against or claim to it on the part of any person.

(Italics ours.)

We focus on the endorsement by Richard T. McClain. First, the deeds of trust were not attached to the notes, payment of which they were intended to secure. Accordingly, any indication on the deeds or assignments thereof that McClain was the president of Stillaguamish Estates, Inc., do not assist plaintiffs' contentions that the notes were negotiated by Stillaguamish to Viking. RCW 62A.3–202(2) declares

(2) An indorsement must be written by or on behalf of the holder and on the instrument or *on a paper so firmly affixed thereto as to become a part thereof.*

(Italics ours.)

Additionally, McClain's bare signatures on the notes were not Stillaguamish's *corporate* endorsements. The signatures not only failed to indicate that McClain was acting on behalf of the corporation; they even failed to indicate that he was an officer of or even remotely connected with

the corporation. Negotiation is the transfer of an instrument in such *form* that the transferee becomes a holder. RCW 62A.3–202(1). Because the notes were payable to order, they can only be negotiated by *delivery with the necessary endorsement.* RCW 62A.3–202(1).

Accordingly, even assuming that McClain was the president of Stillaguamish Estates, Inc., and that he had authority to execute these endorsements, Viking's most favorable status was simply that it acquired legal title to the three notes, and did have the specifically enforceable right to obtain the proper endorsements. RCW 62A.3–201; *see* 2 R. Anderson, *Uniform Commercial Code* § 3–201:10, at 753 (2d ed. 1971). To this date, however, Viking has not exercised that right. The most favorable status of the plaintiffs is that, as assignees of Viking, they acquired whatever legal title Viking had. Most certainly neither Viking nor plaintiffs became holders in due course.

Each of the plaintiffs, though the record indicates they took for value, took with notice of the facial insufficiency of the original payee's endorsements. Thus, they took with notice that "the obligation of any party is voidable . . ." RCW 62A.3–304(1)(b). Accordingly, they could not be holders in due course, in any event, because they did not take "without notice . . . of any defense against . . . it on the part of any person." RCW 62A.3–302(1)(c). They, therefore, acquired no rights of a holder in due course. Specifically, they did not take their respective notes free from all defenses of the maker with whom they had not dealt. RCW 62A.3–305(2).

Stock asserted a defense that he was not liable on the notes by reason of a side agreement he had with Viking to whom the notes were transferred on the date he executed them and through whom plaintiffs acquired title to the notes.

Summary judgment was improperly granted to plaintiffs.

Judgment reversed, and the cause is remanded for further proceedings.

PETRICH, C.J., and WORSWICK, J., concur.