[No. 26818-0-I.   Division One.   January 27, 1992.]

CHRISTINE L. WESCHE, *Petitioner*, v. OLIVER H. MARTIN,
ET AL, *Defendants*, NANCY A. CHRISTOPHERSON,
*Respondent*, RICHARD W. ZELDENRUST,
ET AL, *Appellants*.

C. *Nelson Berry,* for appellants.

*W. John Sinsheimer* and *Sinsheimer & Meltzer,* for respondent.

WEBSTER, J. — Richard and Josie Zeldenrust, the appellants, bought and sold property through Oliver Martin and his real estate brokerage firm, Elliott Bay Investment Company (Elliott Bay). In the course of their business dealings with Martin, the Zeldenrusts executed one promissory note to Elliott Bay and three to Martin for deferred commissions owed him (the Zeldenrust notes). Martin executed one promissory note to Zeldenrusts for a loan (the Martin note). Martin later endorsed the Zeldenrust notes to Nancy Christopherson, the respondent. The Zeldenrusts assert that the trial court erred in finding that: (1) the parties intended the Zeldenrust notes to bear interest and Christopherson was entitled to recover interest on the notes; (2) Zeldenrusts were estopped from asserting that the notes should be interest free; (3) Christopherson's action to recover inter-

est on the notes was not barred by the statute of limitations; and (4) Zeldenrusts were not the prevailing party. Christopherson asserts that the trial court erred in concluding that: (1) she was not a holder in due course and the Zeldenrusts were entitled to a setoff in the amount of the Martin note, and (2) she was not the prevailing party. Both parties assert they are entitled to attorney fees on appeal. We affirm.

## FACTS

Oliver Martin created Elliott Bay Investment Company in 1976 and was its president and sole shareholder. Nancy Christopherson began her employ at Elliott Bay in 1977 as a salesperson and was the designated real estate broker for Elliott Bay from 1980 until September of 1984, when Elliott Bay went out of business. In addition to these responsibilities, she acted as office manager, bookkeeper, typist, and receptionist. Since the company had no other licensed salesperson, broker, or staff employee, she was personally responsible for the bulk of the work.

In 1979, Christopherson earned Elliott Bay a $60,000 real estate commission, which was incorporated into a promissory note issued by Bryan and Mary Lou Chesledon. The Chesledon note bore interest at 15 percent per annum and required monthly payments of interest only and full payment of the balance on October 1, 1982. Since Elliott Bay was experiencing financial difficulties, the monthly interest payments were used exclusively to cover the business's operating expenses. Christopherson did not receive any salary from Elliott Bay during this period, and she and Martin orally agreed that she would receive the $60,000 deferred commission receivable from the Chesledons. Subsequently, however, Martin assigned the Chesledon note to acquire an option to purchase the Del Rey Apartment in Ballard and forfeited the note.

Beginning in 1981, Oliver Martin and his corporation engaged in a series of real estate transactions with Richard and Josie Zeldenrust. Zeldenrusts purchased and sold

property through Elliott Bay and deferred payment of real estate commissions owed Martin by executing promissory notes to Martin or Elliott Bay in the amount of each commission. Each promissory note was secured by a deed of trust. Martin and the Zeldenrusts intended to form a partnership that would own and manage two apartment buildings on Capitol Hill known as the "Bellevue Avenue properties". They envisioned that Martin would purchase his partnership interest with the promissory notes in the amount of the deferred commissions. No formal partnership ever evolved, however, and the Zeldenrusts retained ownership of the Bellevue Avenue properties.

In the meantime, Martin apparently agreed to manage the Bellevue Avenue properties with the understanding that he was responsible for meeting expenses and entitled to any net profits. The operating revenues generated by the buildings did not cover the debt against the property. Martin and the Zeldenrusts agreed that Martin would make up his share of the shortfall by issuing a promissory note to Zeldenrusts in the amount of $17,000 bearing 20 percent interest. The note was executed on November 1, 1982.

Martin endorsed four of the Zeldenrust notes to Christopherson to satisfy his debt to her. The specific terms of the four Zeldenrust notes, as initially executed, are as follows:

1. Promissory note executed on January 25, 1982, in the amount of $29,500 and bearing interest at the rate of 12 percent per annum made payable to Elliott Bay.

2. Promissory note executed on January 26, 1982, in the amount of $15,225 and bearing interest at the rate of 12 percent per annum made payable to Oliver Martin.

3. Promissory note dated November 1, 1982, in the amount of $18,725 and bearing interest at the rate of 12 percent per annum made payable to Oliver Martin.

4. Promissory note dated April 15, 1984, in the amount of $16,583.26 bearing interest at the rate of 12 percent per annum and made payable to Oliver Martin.

In 1986, when the Zeldenrusts refinanced the property, they replaced the note for $15,225 and the note for $18,725. The original notes and deeds of trust were reconveyed and backdated to 1982. Richard Zeldenrust crossed out the interest provision on the replaced notes and signed his initials. He also lined out the interest provision on the $16,583.26 note, for which no replacement note exists. Neither Josie Zeldenrust nor Martin initialed the line outs. At some point after execution of the replacement notes, Martin endorsed and made payable to Christopherson the replacement notes, the note on which Richard Zeldenrust deleted the interest provision, and the note that had not been replaced or altered.

## DISCUSSION

Zeldenrusts challenge the trial court's finding that the parties intended interest to accrue on the original notes executed by the Zeldenrusts. They contend that the promissory notes were intended to reflect ownership interests that Martin purchased in the Bellevue Avenue properties with sales commissions earned by him. The essence of their argument is that, because the notes do not reflect loans, Martin could not have intended interest to accrue on them. Martin responds that he intended the notes to bear interest.[1]

In reviewing findings of fact entered by the trial court, the appellate court's role is limited to determining whether the findings are supported by substantial evidence. *Fred Hutchinson Cancer Research Ctr. v. Holman*, 107 Wn.2d 693, 712, 732 P.2d 974 (1987). The four Zeldenrust notes in question expressly included interest at the rate of 12 percent per annum. Although the parties intended the notes to represent ownership interests rather than loans, they never reached an agreement on what would happen with the notes if the partnership plans did not proceed. Zeldenrusts

[1]Since Zeldenrusts believed interest would not accrue on the notes, and Martin believed interest would accrue, we reject Zeldenrusts' assertion that the parol evidence was "uncontroverted". We also reject Zeldenrusts' unsupported contention that the court failed to consider the parol evidence.

were assisted in the purchase of property by deferring payment of the commissions owed to Martin. Common sense suggests that Martin would not have agreed to defer payment of the commissions without consideration either in the form of interest, or a fixed percentage ownership interest in the property, which would have allowed him to share in any profits generated by rental or sale of the property. Since Martin never acquired any title to the Bellevue Avenue properties and no formal partnership agreement was ever created, Martin had no reason to agree to defer his compensation without interest. We reject Zeldenrusts' assertion that since the notes represent ownership interests rather than loans, the parties necessarily intended the notes to not bear interest. The trial court's finding that the parties intended for interest to accrue on the notes when they were initially executed is supported by substantial evidence.[2]

■ The Zeldenrusts next assert that Christopherson's action to recover interest on the Zeldenrust notes is barred by the statute of limitations. Issues not raised in the trial court will not be considered for the first time on appeal. *Ruddach v. Don Johnston Ford, Inc.*, 97 Wn.2d 277, 281, 644 P.2d 671 (1982). The party asserting the defense of statute of limitations must plead it affirmatively and prove each of its elements. *Brougham v. Swarva*, 34 Wn. App. 68, 74, 661 P.2d 138 (1983). If an affirmative defense is not

---

[2]The Zeldenrusts also challenge the trial court's finding that "there [was] no consideration for removal of the applicable rates of interest." Finding of fact 21. In light of the trial court's finding that the interest provisions on the reissued notes were unilaterally deleted by Richard Zeldenrust, this assignment of error carries little significance. See findings of fact 12, 15. To prove that the parties agreed to delete the interest on the reissued notes, the Zeldenrusts were required to demonstrate that they provided adequate consideration, and that Martin agreed to the deletion. Rather than providing proof on these points, however, the Zeldenrusts misconstrue the trial court's finding as reading that *Martin or Elliott Bay* failed to provide consideration. Clearly, the benefit of deleting the interest provisions flowed to the Zeldenrusts, and the court's finding on the absence of consideration was directed to the Zeldenrusts. The trial court made no error.

In view of our decision that the parties intended the Zeldenrust notes to bear interest, we need not address Zeldenrusts' argument that the trial court erred in holding that they were estopped from deleting the interest provisions.

affirmatively pleaded, asserted in a motion under CR 12(b), or tried by the express or implied consent of the parties, the defense is deemed waived. *RCA v. Radio Station KYFM, Inc.*, 424 F.2d 14, 17 (10th Cir. 1970). Here, the Zeldenrusts did not raise the statute of limitations defense until they filed their motion for reconsideration. We therefore decline to review this assignment of error.[3]

We next address Christopherson's contention that the trial court erred in holding that she did not take the Zeldenrust notes as a holder in due course. Christopherson asserts that the trial court erred as a matter of law in applying the "close connection doctrine". Under the judicially developed close connection doctrine, the purchaser of a negotiable instrument is not a holder in due course if the purchaser is too closely connected to his or her transferor. *Maynard v. England*, 13 Wn. App. 961, 970, 538 P.2d 551 (1975). The Zeldenrusts contend that the trial court's holding rests on its finding that Christopherson had notice of the Martin note, which destroyed her status as a holder in due course. Alternatively, they contend that Martin's personal endorsement on the Zeldenrust note that was made payable to Elliott Bay rather than to Martin put Christopherson on notice that the endorsement may be defective and destroyed her status as a holder in due course.[4] We are unable to determine from the record which standard the trial court applied in holding that Christopherson was not a holder in due course.[5] Since the Zeldenrusts do not argue that the

---

[3]Even if the Zeldenrusts had preserved this claim of error for appellate review, there is no authority supporting the proposition that anytime parol evidence is admitted, the contract automatically becomes an oral contract. Christopherson's claims were based wholly on *written* instruments, although the alleged defenses to her claims involved parol evidence.

[4]Because we are unable to discern from the record whether the Zeldenrusts made this argument below, see footnote 5, and Christopherson has not asserted that the Zeldenrusts failed to preserve this issue for appellate review, we are obligated to address it.

[5]Since the parties either did not submit briefs to the trial court, or failed to make them part of the appellate record, we have no way of ascertaining what legal arguments the parties presented to the trial court.

close connection doctrine should apply, we do not review the trial court's decision under that standard, but address instead the legal standards upon which the Zeldenrusts assert the trial court's decision rests.

The Zeldenrusts claim that Christopherson's notice of the Martin note destroyed her status as a holder in due course. As a general rule, one who is a holder in due course takes a negotiable instrument free from "all claims to it on the part of any person" and from "all defenses of any party to the instrument with whom the holder has not dealt". RCW 62A.3-305(1), (2); *see also* RCW 62A.3-306. RCW 62A.3-302(1) defines a holder in due course as follows:

> (1) A holder in due course is a holder who takes the instrument
> (a) for value; and
> (b) in good faith; and
> (c) without *notice* that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

(Italics ours.) "Notice" is defined in RCW 62A.1-201(25) as follows:

> A person has "notice" of a fact when (a) he has actual knowledge of it; or
> (b) he has received a notice or notification of it; or
> (c) from all the facts and circumstances known to him at the time in question he has *reason to know* that it exists.
> A person "knows" or has "knowledge" of a fact when he has actual knowledge of it.

(Italics ours.) One has "reason to know" of a fact if one actually knows information from which a person exercising reasonable care under commercially recognized standards would infer that the fact in question exists or that there is a substantial chance of its existence. *Von Gohren v. Pacific Nat'l Bank*, 8 Wn. App. 245, 252, 505 P.2d 467 (1973) (relying on Restatement (Second) of Agency § 9, comment *d*, at 46 (1958)); RCW 62A.1-201(25)(c). The "reason to know" standard under RCW 62A.1-201(25)(c) is an objective standard. *Von Gohren*, at 252.

Whether a holder has notice of "any defense or claim to" the instrument under RCW 62A.3-302(1)(c) is governed

by RCW 62A.3-304. That provision specifies the circumstances under which a purchaser has notice of a claim or defense, and the facts known by the purchaser that do not by themselves give the purchaser notice of a defense or claim. A setoff or counterclaim, which is extrinsic to the action on the instrument, is not a circumstance giving rise to a claim or defense under RCW 62A.3-304(1)-(3). *See* 2 F. Hart & W. Willier, *Bender's Uniform Commercial Code Service* § 11.05 n.1 (1991). Official Comment 3 to § 3-304 of the Uniform Commercial Code (UCC) states:

> "Voidable" obligation in paragraph (b) of subsection (1) is intended to limit the provision to notice of defense which will permit any party to avoid his original obligation on the instrument, *as distinguished from a set-off or counterclaim.*

(Italics ours.) The comment thus indicates that a setoff or counterclaim which would be available in a regular contract action does not constitute a defense or claim for purposes of determining whether a purchaser is a holder in due course under RCW 62A.3-304 and RCW 62A.3-302(1)(c). This interpretation of the code is supported by case law in other jurisdictions. *First Fed. Sav. & Loan Ass'n v. Gump & Ayers Real Estate, Inc.*, 771 P.2d 1096 (Utah Ct. App.), *cert. denied*, 776 P.2d 916 (Utah 1989); *Sundsvallsbanken v. Fondmetal, Inc.*, 624 F. Supp. 811 (S.D.N.Y. 1985) (payee's duty to indemnify maker of promissory note from certain claims did not preclude collection on note); *Bank of Wyandotte v. Woodrow*, 394 F. Supp. 550 (W.D. Mo. 1975) (a setoff is not a defense that can be asserted to defeat one's status as a holder in due course). We conclude as a matter of law that Christopherson's alleged notice of the Martin note is not a "defense against or claim to" the notes Martin endorsed to her, and that Christopherson cannot be denied holder-in-due-course status on this basis.[6]

Zeldenrusts also assert that Martin's personal signature on the back of the note made payable to Elliott Bay rather

---

[6]Because we conclude that Zeldenrusts' setoff on the Martin note was not a claim or defense, we reject Zeldenrusts' assertion that proof of the existence of

than to Martin without any indication of Martin's representative capacity precluded Christopherson from taking the note as a holder in due course. We first address whether Christopherson was a "holder". RCW 62A.3-202 states in relevant part:

> (1) Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with *any necessary endorsement* . . .
> (2) An endorsement must be written by or on behalf of the holder . . ..

(Italics ours.) Although the code indicates that an instrument payable to order must be endorsed to be "negotiated", it is silent on whether an endorsement containing an insufficient signature by the payee destroys the transferee's status as a holder. The Washington Comments to RCW 62A.3-202 state that subsection (1) "follows" former RCW 62.01.030,[7] which was construed in the case of *Glaser v. Connell*, 47 Wn.2d 622, 289 P.2d 364 (1955). *See* Cosway, *Negotiable Instruments — A Comparison of Washington Law and Uniform Commercial Code Article 3*, 38 Wash. L. Rev. 719, 740 (1963). In *Glaser*, the court entertained whether the plaintiff was a holder in due course of a promissory note executed by the defendant and made payable to the order of the "Holdorf Oyster Corporation", when the president and secretary of the Holdorf Oyster Corporation endorsed the note "Pres. Dwight Holdorf" and "Sec. Opal Holdorf" and delivered it to the plaintiff. *Glaser*, at 622-23. The court held that the note was not endorsed by the corporate payee, since the name of the corporate payee was not included in the endorsement, and that the plaintiff therefore was not a "holder". *Glaser*, at 628. The court reasoned as follows:

---

the Martin note shifted to Christopherson the burden of proving her status as a holder in due course. RCW 62A.3-307(3) states:

"After it is shown that *a defense exists* a person claiming the rights of a holder in due course has the burden of establishing that he or some person under whom he claims is in all respects a holder in due course." (Italics ours.)

[7]Section 30 of the Uniform Negotiable Instruments Act.

> A holder in due course of negotiable paper enjoys certain privileges and immunities which the transferee of an unendorsed order instrument does not have. A holder in due course of such paper need look no further than the instrument itself to ascertain how much, when, and from whom a sum can be demanded. On the note involved in this case, however, any party to whom it is presented would have to resort to facts extrinsic of the instrument to ascertain whether the purported endorsement of the instrument was made by the named corporate payee.

*Glaser*, at 628. The court specifically rejected the plaintiff's attempt to establish the validity of the corporate endorsement by relying on the code provisions governing the personal liability of the payee, stating that those provisions were inapposite to whether the transferee was a holder. *Glaser*, at 625-27.

Following the enactment of the UCC in Washington, the Court of Appeals similarly decided the case of *Fines v. Stock*, 37 Wn. App. 101, 678 P.2d 839 (1984). In *Fines*, the defendant executed three promissory notes made payable to "Stillaguamish Estates, Inc.". The reverse side of each note contained a signature, "Richard T. McClain", and an endorsement to "Viking Financial Services, Inc.". Viking Financial Services subsequently endorsed the notes to the plaintiffs. *Fines*, at 102-03. Relying on *Glaser*, the court held that the plaintiffs were not holders in due course. *Fines*, at 104. The court reasoned that the signatures by McClain failed to indicate that "he was an officer of or even remotely connected with the corporation", and that whether McClain had authority was irrelevant; without the proper endorsements, the notes were not "negotiated" and the transferee did not become a "holder" under RCW 62A.3-202(1). *Fines*, at 104-05.

The *Fines* court further reasoned that, because of the facial insufficiency of the endorsement, the plaintiffs did not take without notice of any defense under RCW 62A.3-302(1)(c) and RCW 62A.3-304(1)(b):

> Each of the plaintiffs, though the record indicates they took for value, took with notice of the facial insufficiency of the original payee's endorsements. Thus, they took with notice

that "the obligation of any party is voidable . . ." RCW 62A.3-304(1)(b). Accordingly, they could not be holders in due course, in any event, because they did not take "without notice . . . of any defense against . . . it on the part of any person." RCW 62A.3-302(1)(c). They, therefore, acquired no rights of a holder in due course. Specifically, they did not take their respective notes free from all defenses of the maker with whom they had not dealt. RCW 62A.3-305(2).

*Fines*, at 105.

In the instant case, Martin wrote the following on the back of the promissory note in the amount of $29,500 executed by the Zeldenrusts to "Elliott Bay Investment Co.".

Pay to the order of Nancy Christopherson
Oliver H. Martin

The endorsement was insufficient because it did not indicate that Martin was signing on behalf of Elliott Bay. Therefore, the instrument was not properly "negotiated" and Christopherson was not a "holder". *Glaser*, at 628. Moreover, Christopherson took the note with notice that the obligation of the Zeldenrusts or Elliott Bay was voidable under RCW 62A.3-304(1)(b). *Fines*, at 105. Christopherson asserts that the endorsement was valid under RCW 62A.3-403(1), which provides that one's authority to sign an instrument "may be established as in other cases of representation." We reject this argument. RCW 62A.3-403(1) governs who is liable on a note. It does not govern whether the owner of the note is a holder in due course. *See Glaser*, at 625-27. We conclude that Christopherson was not a holder in due course.

■ Once it is determined that a person possessing an instrument is not a holder in due course, that person takes the instrument subject to "all defenses of any party which would be available in an action on a simple contract". RCW 62A.3-306(b). There need not be any "connection between the defense or claim which the party on the instrument is attempting to assert and the flaw which . . . deprives one of holder in due course status." 1 J. White & R. Summers, *Uniform Commercial Code* § 14-6, at 717 (3d ed. 1988); *accord, Central Wash. Bank v. Mendelson-Zeller, Inc.*, 113 Wn.2d 346, 358, 779 P.2d 697 (1989). Thus, although

Christopherson's alleged notice of the Martin note could not destroy her status as a holder in due course, because a separate claim or defense did deprive her of a holder-in-due-course status, the Zeldenrusts are entitled to assert their claim on the Martin note as a setoff against the $29,500 note executed by them.

Lastly, Christopherson and the Zeldenrusts each assert that they were the prevailing party both in the trial court and on appeal, and therefore are entitled to reasonable attorney's fees. Each of the four Zeldenrust notes in question provides that if litigation is necessary to collect any of the principal or interest on the note, the Zeldenrusts must pay reasonable attorney's fees incurred as a result. RCW 4.84.330 states that whenever a contract specifically provides for an award to one of the parties for attorney's fees required to enforce the provisions of such contract, "the prevailing party, whether he is the party specified in the contract . . . , shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements." Here, Zeldenrusts prevailed on the holder-in-due-course issue below and on appeal, and Christopherson prevailed on whether the notes bore interest below and on appeal. Since neither party has substantially prevailed, we hold that neither party is entitled to reasonable attorney's fees in connection with the trial or this appeal.

The judgment is affirmed.

GROSSE, C.J., and COLEMAN, J., concur.