FILED
COURT OF APPEALS
DIVISION II

2014 MAR 25 AM 8: 52

STATE OF WASHINGTON

BY_____
                DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43758-9-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| TIMOTHY HUMPHRIES, | |
| Appellant. | |

BJORGEN, J. – A jury returned verdicts finding Timothy Humphries guilty of unlawful possession of a controlled substance with intent to deliver (cocaine), unlawful possession of a controlled substance (Oxycontin), and driving under the influence (DUI). Humphries appeals his convictions, asserting that (1) the State failed to present sufficient evidence to support his driving under the influence conviction, (2) the State failed to present sufficient evidence to support his possession of cocaine with intent to deliver conviction, (3) the jury instructions relieved the State of its burden to prove the essential elements of unlawful possession of Oxycontin, (4) the prosecutor committed misconduct at closing by arguing a theory not supported by the jury

instructions, and (5) defense counsel was ineffective for failing to request an unwitting possession jury instruction and for failing to object to the prosecutor's argument at closing. We affirm.

## FACTS

While attending a party, Timothy Humphries began arguing with his ex-girl friend and his ex-girl friend's boyfriend, who went by the name "E." Report of Proceedings (RP) at 365-68. Humphries was drinking alcohol at the party and was "pretty buzzed." RP at 377. Humphries and E agreed to continue their argument at a different location, and they both left in separate cars. Humphries returned to the party about 30 minutes later, sat in his car, and revved his engine. While displaying a gun against the frame of his car door, Humphries told someone at the party that he was looking for E and that "if [E] really wants some, [he can] come get some." RP at 374. After Humphries drove away, someone at the party called 911 to report the incident.

The same evening, March 3, 2012, Bremerton Police Patrol Sergeant Billy Renfro responded to a dispatch report of a threat with a firearm. Renfro saw a vehicle matching the description provided by the 911 caller and pulled the vehicle over. Officer Bryan Hall arrived at the scene as Renfro was conducting his stop. The vehicle's passenger was compliant with the officers' commands, but the driver of the vehicle, Humphries, was not. While in his car, Humphries repeatedly lowered his right hand and leaned to the right. Once out of the vehicle Humphries said, "Don't shoot me," and he acted as if he was weak in the knees. RP at 117.

Hall placed Humphries in handcuffs and conducted a pat-down search of his outer clothing before placing him in Officer Matthew Thuring's vehicle. A short time later, Hall informed Humphries that he was under arrest, asked him to step out of Thuring's vehicle, and

searched him incident to arrest. During the search of Humphries' person, Hall found a cigarette pack containing $900 and a small bag containing 50 prescription pills, which were later tested and determined to contain oxycodone.

Thuring had to leave the scene to attend to another priority call. When Renfro went to transfer Humphries from Thuring's vehicle, he noticed that Humphries was asleep and drooling on himself. Additionally, Renfro could smell the odor of intoxicants on Humphries' breath. During the transfer, Renfro saw that Humphries had difficulty maintaining his balance. Thuring inspected the back seat of his patrol car and saw a pack of Newport cigarettes, the brand of cigarettes that Humphries smokes, near the location where Humphries had been sitting. When Thuring opened the pack, he found a razor blade and six packages that all appeared to contain cocaine. The six packages were later weighed, tested, and confirmed to contain a combined total of 17.7 grams of cocaine.

Officer Donnell Rogers, a certified drug recognition expert, arrived at the scene to assist the other officers and to transfer Humphries to the Kitsap County Jail. When Rogers assisted Humphries to his patrol vehicle, he could smell alcohol and burnt marijuana emanating from Humphries. Rogers noted that Humphries had red and watery eyes and that his pupils appeared dilated. Rogers further noted that Humphries had "very slowed [and] very slurred speech." RP at 306. While walking to Rogers's patrol vehicle, Humphries stumbled and staggered to the point where Rogers had to hold on to him and assist him to the vehicle. After Rogers secured Humphries in his vehicle, he informed Humphries that he was investigating the possibility that Humphries was impaired. Humphries told Rogers that "he may have had a drink or two [and]

3

that he had smoked some marijuana," but that he possessed a "marijuana green card." RP at 307-08. Rogers told Humphries that a green card does not allow him to drive impaired.

After arriving at the Kitsap County Jail, Rogers gave Humphries a "DUI packet" and explained its contents, which included an advisement of constitutional rights, an implied consent form for blood testing, and an advisement of the consequences for refusing a blood test. Humphries told Rogers that he understood his rights and that he was refusing to submit to a blood test. On June 26, 2012, the State charged Humphries by amended information with unlawful possession of a controlled substance with intent to deliver (cocaine), unlawful possession of a controlled substance (Oxycontin), DUI, and unlawful display of a weapon.

At trial, Renfro and Rogers both testified that they believed Humphries had been intoxicated while driving, based on their observations of Humphries' appearance and behaviors on the night of his arrest. On cross-examination, Renfro testified that he did not observe Humphries driving erratically or commit any traffic infractions when he pulled him over. Hall testified on cross-examination that he did not recall Humphries having any difficulty walking on the night of his arrest. Thuring testified on cross-examination that during his one-minute interaction with Humphries, he did not notice that Humphries had watery or bloodshot eyes, slurred speech, bad balance, or the smell of alcohol on him.

After the State and defense rested, the trial court discussed jury instructions with counsel. During the discussion, defense counsel noted that the State's proposed "to-convict" jury instruction for unlawful possession of a controlled substance referred to "oxycodone," and argued that the instruction was inconsistent with the State's charge for unlawful possession of

4

"Oxycontin." RP at 389. The State moved to amend its information to charge unlawful possession of oxycodone, which motion the trial court denied. The trial court instructed the jury:

> To convict the defendant of the crime of possession of a controlled substance, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about or between March 3, 2012, and March 4, 2012, the defendant possessed oxycontin and that "oxycontin" is an official name, common or usual name, chemical name or brand name for a controlled substance; and
> (2) That this act occurred in the State of Washington.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
> On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Clerk's Papers (CP) at 271. The trial court further instructed the jury, "Oxycodone is a controlled substance." CP at 272. Defense counsel did not request an "unwitting possession" instruction. Neither party requested an instruction defining actual and constructive possession, and the trial court did not provide one.

During its closing argument, defense counsel explained the difference between actual and constructive possession and argued that the evidence did not support the State's theory that Humphries constructively possessed the cocaine found in Thuring's patrol car. In response, the State argued that the evidence supported a finding that Humphries actually possessed the cocaine. The jury returned verdicts finding Humphries guilty of unlawful possession of a controlled substance with intent to deliver (cocaine), unlawful possession of a controlled substance (Oxycontin), and DUI. The jury also returned a verdict finding Humphries not guilty

of unlawful display of a weapon. Humphries timely appeals his convictions.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Humphries first contends that the State failed to present evidence sufficient to support his DUI conviction and his unlawful possession of a controlled substance with intent to deliver (cocaine) conviction. We disagree.

Sufficient evidence exists to support a conviction if any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the State. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). A defendant claiming insufficiency of the evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn from the evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

### A.    Driving Under the Influence

To convict Humphries of DUI, the State had to prove beyond a reasonable doubt all the essential elements of former RCW 46.61.502 (2011), the statute in effect when Humphries was alleged to have committed his crime. *See State v. Schmidt*, 143 Wn.2d 658, 673-74, 23 P.3d 462 (2001) (courts apply "the law in effect at the time a criminal offense is actually committed."). Former RCW 46.61.502 provided three alternative means by which an individual may commit the crime of DUI. *See, e.g., State v. Shabel*, 95 Wn. App. 469, 473, 976 P.2d 153 (1999). The

State had to prove beyond a reasonable doubt that (1) Humphries drove a vehicle within the state, and (2) either (a) had a blood alcohol concentration of 0.08 or higher within two hours after driving, (b) was under the influence of or affected by intoxicating liquor or any drug, or (c) was under the combined influence of or affected by intoxicating liquor or any drug. Former RCW 46.61.502.

Here, Renfro testified that Humphries was the driver of a vehicle he had pulled over in Bremerton, Washington. This was sufficient evidence that Humphries drove a vehicle in this state. Additionally, Renfro testified that he observed Humphries sleeping and drooling, having difficulty maintaining balance, and emanating the odor of intoxicants. Rogers similarly testified that he could smell the odor of alcohol and burnt marijuana on Humphries. Rogers also testified that Humphries had watery and bloodshot eyes, dilated pupils, and slurred speech. Rogers further testified that Humphries admitted to having a drink or two and to smoking marijuana. There was also testimony presented at trial that Humphries had been drinking alcohol and was "pretty buzzed" before driving away from the party he was attending. RP at 377. Taken together, this evidence is more than sufficient to prove that Humphries was under the influence of or affected by intoxicating liquor or any drug or that he was under the combined influence of or affected by intoxicating liquor or any drug.

Humphries nonetheless argues that sufficient evidence did not support his DUI conviction because there was no evidence that he had been driving erratically before being pulled over. Although Renfro testified that he did not observe Humphries driving erratically, former RCW 46.61.502 does not require direct evidence that a defendant had been driving erratically. Rather, the State need only present evidence that is "sufficient for the factfinder to infer that the

[defendant's] ability to handle an automobile was lessened in an appreciable degree by the consumption of intoxicants or drugs." *State v. Wilhelm*, 78 Wn. App. 188, 193, 896 P.2d 105 (1995). Such evidence may be circumstantial. *Wilhelm*, 78 Wn. App. at 192-93. Here, Renfro's and Rogers's observations of Humphries appearance and behaviors on the night of his arrest was sufficient circumstantial evidence from which the jury could infer that Humphries was under the influence of alcohol or drugs, or a combination of both, while driving a vehicle in Washington State. Accordingly, sufficient evidence supports his DUI conviction.

Humphries also argues that sufficient evidence did not support his DUI conviction in light of conflicting evidence of his intoxicated state. Specifically, Humphries directs us to Thuring's testimony that he did not notice whether Humphries had watery or bloodshot eyes, slurred speech, bad balance, or the smell of alcohol on him, as well as Hall's testimony that he did not recall Humphries having any difficulty walking on the night of his arrest. But when reviewing the sufficiency of the evidence in support of conviction, we view the evidence in a light most favorable to the State and do not evaluate the credibility of witnesses. *Hosier*, 157 Wn.2d at 8; *Walton*, 64 Wn. App. at 415-16. Accordingly, Humphries's sufficiency argument on this ground is meritless and we do not further address it.

B.      Unlawful Possession of a Controlled Substance with Intent to Deliver

Next, Humphries contends that the State failed to present sufficient evidence in support of his unlawful possession of a controlled substance with intent to deliver (cocaine) conviction. We disagree. To convict Humphries of unlawful possession of a controlled substance with intent to deliver, the State had to prove beyond a reasonable doubt that he (1) unlawfully possessed (2) with intent to deliver (3) a controlled substance. Former RCW 69.50.401 (2005); *State v. Sims*,

119 Wn.2d 138, 141, 829 P.2d 1075 (1992). Humphries challenges only the sufficiency of the evidence in support of the first element, possession.

Humphries asserts that the State failed to present any evidence that he actually possessed the cocaine found in the cigarette pack in the back of Thuring's patrol vehicle. He urges that the State's evidence merely showed his proximity to the cocaine, which Humphries argues was insufficient to establish his constructive possession of the cocaine. We hold that the State presented sufficient circumstantial evidence that Humphries actually possessed cocaine and thus, sufficient evidence supported his conviction.

A defendant's possession of a controlled substance may be either actual or constructive. *State v. Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969). "Actual possession means that the goods are in the personal custody of the person charged with possession; whereas, constructive possession means that the goods are not in actual, physical possession, but that the person charged with possession has dominion and control over the goods." *Callahan*, 77 Wn.2d at 29. The State may prove actual possession by circumstantial evidence. *State v. Manion*, 173 Wn. App. 610, 634, 295 P.3d 270 (2013) (citing *State v. DuPont*, 14 Wn. App. 22, 25, 538 P.2d 823 (1975)).

Here, Thuring testified that he had checked the back seat of his patrol car at the beginning of his shift on March 3, 2012 and did not see anything there. He also testified that he had not placed anyone in the back of his patrol car on that evening before Humphries. After Humphries had been removed from the back of Thuring's patrol vehicle and before Thuring left the scene, he again searched the back of his vehicle to make sure Humphries did not leave any property

behind. During this search, Thuring found the pack of Newport cigarettes containing a razor blade and six packages of cocaine where Humphries had been sitting. There was trial testimony that Humphries smoked Newport brand cigarettes. When viewed in a light most favorable to the State, the above evidence was sufficient to establish that Humphries actually possessed the cocaine before leaving it in Thuring's vehicle. Accordingly, we hold that sufficient evidence supported Humphries's possession of a controlled substance with intent to deliver (cocaine) conviction.

## II. JURY INSTRUCTIONS

Next, Humphries asserts that the trial court's jury instructions relieved the State of its burden to prove all the essential elements of possession of a controlled substance (Oxycontin). We disagree.

We review alleged errors of law in jury instructions de novo. *State v. Barnes*, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005); *see also State v. Pirtle*, 127 Wn.2d 628, 656-57, 904 P.2d 245 (1995). A jury instruction that relieves the State of its burden of proof is reversible error. *Pirtle*, 127 Wn.2d at 656. A defendant may challenge a jury instruction for relieving the State of its burden of proof for the first time on appeal. *State v. Brett*, 126 Wn.2d 136, 171, 892 P.2d 29 (1995). In general, all essential elements to a charged crime must be included in the trial court's "to-convict" jury instruction. *State v. Mills*, 154 Wn.2d 1, 7, 109 P.3d 415 (2005).

To convict Humphries for unlawful possession of a controlled substance, the State had to prove beyond a reasonable doubt that Humphries possessed a controlled substance. Former

No. 43758-9-II

RCW 69.50.4013 (2003). RCW 69.50.206 provides that "oxycodone" "by whatever official name, common or usual name, chemical name, or brand name designated" is a schedule II controlled substance. *See also* former RCW 69.50.101(d) (2010) (defining "controlled substance" in part as any schedule II drug). Humphries appears to argue that the trial court's jury instructions relieved the State of its burden to prove that "Oxycontin" was a controlled substance. Here, the trial court's "to-convict" jury instruction stated:

> To convict the defendant of the crime of possession of a controlled substance, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about or between March 3, 2012, and March 4, 2012, the defendant possessed oxycontin and that "oxycontin" is an official name, common or usual name, chemical name or brand name for a controlled substance; and
> (2) That this act occurred in the State of Washington.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
> On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 271. This instruction did not relieve the State of its burden of proof as it required the jury to find all the essential elements of unlawful possession of a controlled substance, including the requirement that the substance Humphries was alleged to possess, Oxycontin, was a controlled substance as defined in RCW 69.50.206. The trial court's jury instruction stating "Oxycodone is a controlled substance" also did not relieve the State of its burden of proof as oxycodone is statutorily defined as a controlled substance under former RCW 69.50.101(d) and RCW

11

69.50.206(b)(1)(xvi). Accordingly, we hold that the trial court's jury instructions did not relieve the State of its burden of proof. [1]

### III. PROSECUTORIAL MISCONDUCT

Next, Humphries contends that the prosecutor committed misconduct during rebuttal closing argument by arguing a constructive possession theory unsupported by the jury instructions. Because defense counsel invited the prosecutor's remarks that Humphries now complains of on appeal by first arguing the theory of constructive possession during his closing argument, we disagree.

A defendant claiming prosecutorial misconduct must show both improper conduct and resulting prejudice. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). Prejudice exists when there is a substantial likelihood that the misconduct affected the verdict. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). Because Humphries did not object to the prosecutor's allegedly improper conduct at trial, we must ascertain whether the prosecutor's misconduct was "so flagrant and ill-intentioned" that it caused an "enduring and resulting prejudice" incurable by a jury instruction. *State v. Stenson*, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997). Under this heightened standard of review, Humphries has the burden to show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'"

---

[1] Humphries arguments on this issue are difficult to discern. To the extent he argues that the trial court's instructions were not supported by the evidence at trial, the State presented testimony that Oxycontin is a brand name for the drug oxycodone. To the extent that he argues that the trial court's jury instructions were inconsistent with the State's charges, the State's amended information alleges that Humphries possessed Oxycontin, not oxycodone as Humphries asserts in his brief.

No. 43758-9-II

*State v. Emery*, 174 Wn.2d 741, 761, 278 P.3d 653 (2012) (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

A prosecutor's remarks are not misconduct if the remarks are invited by defense counsel or are in reply to defense counsel's acts "'unless such remarks go beyond a pertinent reply and bring before the jury extraneous matters not in the record, or are so prejudicial that an instruction would not cure them.'" *State v. Dennison*, 72 Wn.2d 842, 849, 435 P.2d 526 (1967) (quoting *State v. LaPorte*, 58 Wn.2d 816, 822, 365 P.2d 24 (1961)); *State v. Jones*, 144 Wn. App. 284, 299, 183 P.3d 307 (2008).

Here defense counsel invited the prosecutor's allegedly improper rebuttal by first raising the issue in his closing argument, stating:

> But let's talk about actual possession here. There's two ways that an individual can possess something, actual possession and constructive possession. Now, it could be said that I'm in actual possession of the jury instructions. I'm holding them. Maybe they're in my pocket, my jacket. I'm in actual possession. Clearly, what's been proffered before you is that Mr. Humphries wasn't in actual possession of any cocaine. There's been no evidence of that. Now, what the State's theory is is that Mr. Humphries was in constructive possession of the cocaine, ie., he had some dominion and control over it, even though he may not have actually possessed it.

RP at 467. In response to defense counsel's assertion that the State was pursuing a constructive possession theory, the prosecutor argued in rebuttal closing that it was pursuing an actual possession theory, but that Humphries's constructive possession had also been established. To that end, the prosecutor stated:

> Counsel also talked about actual possession versus constructive possession. Timothy Humphries was in actual possession up until the moment he ditched these drugs in the patrol car. And I'm not sure if I quite follow Counsel's argument from there, whether or not it was saying that once he leaves these drugs behind he's no longer in possession of the cocaine? I'm not sure if we're

13

supposed to then charge Officer Thuring with possession of a controlled substance, since they were in his car, at that point? But the constructive possession is there. The actual possession is there until the moment he tries to hide them.

RP at 480.

The prosecutor's remarks regarding constructive possession were clearly in response to defense counsel first raising the issue in his closing argument. Accordingly, "'unless such remarks go beyond a pertinent reply and bring before the jury extraneous matters not in the record, or are so prejudicial that an instruction would not cure them,'" they do not constitute prosecutorial misconduct requiring a reversal of Humphries's convictions. *Dennison*, 72 Wn.2d at 849 (quoting *LaPorte*, 58 Wn.2d at 822). The prosecutor's discussion of constructive possession was brief and did not go beyond a pertinent reply to defense counsel's argument. Additionally, the remarks were not so prejudicial that a curative instruction directing the jury to disregard the remarks could not have cured them. Consequently, under the principles above Humphries has failed to establish prosecutorial misconduct.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Humphries contends that his defense counsel was ineffective for failing to request an unwitting possession jury instruction with regard to his unlawful possession of a controlled substance (cocaine) charge.[2] Because an unwitting possession jury instruction is unavailable in a prosecution for unlawful possession of a controlled substance with intent to deliver, we disagree.

We review ineffective assistance of counsel claims de novo. *State v. Binh Thach*, 126 Wn. App. 297, 319, 106 P.3d 782 (2005). To prevail on an ineffective assistance of counsel

---

[2] Humphries does not assert that his counsel was ineffective for failing to request an unwitting possession instruction with regard to his unlawful possession of a controlled substance (Oxycontin) charge.

14

claim, Humphries must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Brockob*, 159 Wn.2d 311, 344-45, 150 P.3d 59 (2006). Performance is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice results if the outcome of the trial would have been different had defense counsel not rendered deficient performance. *McFarland*, 127 Wn.2d at 337. We strongly presume that counsel is effective and the defendant must show the absence of any legitimate strategic or tactical reason supporting defense counsel's actions. *McFarland*, 127 Wn.2d at 337. To rebut this presumption, the defendant bears the heavy burden of "establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.'" *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

A defendant in a criminal case is "entitled to have the trial court instruct upon its theory of the case if there is evidence to support the theory." *State v. Hughes*, 106 Wn.2d 176, 191, 721 P.2d 902 (1986). "Unwitting possession is a judicially created affirmative defense that may excuse the defendant's behavior, notwithstanding the defendant's violation of the letter of the statute." *State v. Balzer*, 91 Wn. App. 44, 67, 954 P.2d 931 (1998). "To establish the defense, the defendant must prove, by a preponderance of the evidence, that his or her possession of the unlawful substance was unwitting." *Balzer*, 91 Wn. App. at 67.

In *State v. Sanders*, 66 Wn. App. 380, 390, 832 P.2d 1326 (1992), we held that an unwitting possession jury instruction did not apply in a prosecution for unlawful possession with

15

intent to deliver. In so holding, we reasoned that a defendant's knowledge regarding the presence and nature of an illicit substance "is subsumed under the statutory requirement that the defendant intended to deliver a controlled substance." *Sanders*, 66 Wn. App. at 390. Because an unwitting possession jury instruction was unavailable to Humphries with regard to his unlawful possession with intent to deliver (cocaine) conviction, his defense counsel was not ineffective for failing to request it.

Finally, Humphries argues that his defense counsel was ineffective for failing to object to the prosecutor's remarks on constructive possession. However, as we addressed above, the prosecutor's constructive possession remarks were made in response to defense counsel's closing argument and therefore were not improper. Accordingly, Humphries cannot show any prejudice resulting from defense counsel's failure to object to the prosecutor's remarks.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJØRGEN, J.

We concur:

WORSWICK, C.J.

JOHANSON, A.C.J.